# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

**JEAN-EWOLL JEAN-DENIS,**

    **Plaintiff,**

**vs.**　　　　　　　　　　　　　　　　　　**Case No. 3:19cv575-RV-MAF**

**MARK S. INCH,**

    **Defendant.**
_____/

## ORDER and REPORT AND RECOMMENDATION

The parties are advised that an Administrative Order has been entered, reassigning this case to the undersigned Magistrate Judge. ECF No. 43. The case number has changed as shown above and must now be included on all documents filed to reflect the change in judicial assignments.

Plaintiff, a state prisoner proceeding pro se, filed a second amended complaint, ECF No. 27, against Defendant Mark Inch, Secretary of the Florida Department of Corrections. Defendant filed a motion to dismiss on March 23, 2020, asserting that Plaintiff failed to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a). ECF No. 36. Defendant

also filed a motion to stay this case until a ruling is entered by the Eleventh Circuit Court of Appeals in another case (*Sims v. Inch*, 4:16cv49-RH-CAS)[1] which presents the same issue. ECF No. 37. Defendant requests that no ruling be entered on Defendant's motion to dismiss until the *Sims* case is resolved. Plaintiff requests that Defendant's motion to stay be denied. ECF No. 41. Plaintiff has also filed his response to the motion to dismiss, ECF No. 40, requesting that this case be permitted to proceed.

Plaintiff's second amended complaint asserts a First Amendment claim against the Defendant for violating his First Amendment right to the free exercise of his religious beliefs. ECF No. 27 at 6, 9. Plaintiff also contends that his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") have also been violated. *Id.* at 6. At issue in this case are Plaintiff's religious beliefs which are at odds with certain grooming and property regulations of the Department of Corrections. Those are, indisputably, important interests to Plaintiff. Resolution delayed may be justice delayed, as there is no time table provided upon which to balance Plaintiff's rights. This Court does not have any means to estimate how long

---

[1] That appeal was filed by Defendant Inch on September 20, 2019. ECF No. 117 of case 4:16cv49. The appeal proceeds as case number 19-13745-D. ECF No. 120.

Case No. 3:19cv575-RV-MAF

it may take to resolve the issues in *Sims v. Inch*. The issue of exhaustion is just one matter raised by the Defendant on appeal. Proceeding in this case will cause no harm to Defendant, especially if discovery is stayed at least pending resolution of the motion to dismiss. Accordingly, the motion to stay, ECF No. 37, is granted in part and denied in part. The request to stay this case pending a ruling by the Eleventh Circuit in *Sims* is denied. However, discovery will be stayed in this case pending a ruling by the presiding District Judge of the pending motion to dismiss.

**Motion to Dismiss**

Defendant Inch has requested that this case be dismissed because Plaintiff "failed to properly exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA") prior to filing suit . . . ." ECF No. 26 at 1. Specifically, Defendant argues that "Plaintiff has failed to file a petition to initiate rulemaking authority ("PIRM")." *Id.* Defendant contends that because Florida statute 120.81(3) expressly allows inmate to file petitions to initiate rulemaking, it "is an available remedy for inmates to challenge a department rule which must be exhausted prior to filing suit in federal court." *Id.* at 9. Defendant acknowledges that a petition to initiate rule-making "is a separate process from the normal grievance process

Case No. 3:19cv575-RV-MAF

created by FDOC specifically for inmates and described within the Florida Administrative Regulations." *Id.* at 9-10.

In response, Plaintiff asserts that "proper exhaustion" requires that he comply with rules held out by the Florida Department of Corrections as explained by the Supreme Court in Woodford. ECF No. 40 at 2. Plaintiff contends that because the Department's grievance rules, nor the inmate handbook, direct inmates to file a PIRM, then he is not required to do so to exhaust his administrative remedies. *Id.* at 3.

**Analysis**

In enacting the Prison Litigation Reform Act (PLRA), Congress mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). That exhaustion requirement is mandatory, Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Yet an inmate is only

required to exhaust administrative remedies that are "available." Ross v. Blake, 136 S. Ct. 1850, 1855, 195 L. Ed. 2d 117 (2016) (underscoring the PLRA's "built-in exception to the exhaustion requirement: A prisoner need not exhaust remedies if they are not 'available.'").

Courts do not consider the adequacy or futility of administrative remedies, but only the availability of such. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (citing Alexander, 159 F.3d at 1323). Even where an inmate seeks only monetary damages in a civil rights case, he must complete the prison administrative process if it could provide some sort of relief on the complaint although no money could be given administratively. Booth v. Churner, 531 U.S. 956, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958 (2001). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." Jones v. Bock, 549 U.S. 199, 204-209, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007).

A prisoner must also comply with the process set forth and established by the grievance procedures. Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). In other words, not only must a prisoner exhaust a claim under § 1997e(a), the "PLRA exhaustion requirement requires proper

exhaustion." Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387 (2006) (concluding that "proper exhaustion" means complying with the specific prison grievance requirements, not judicially imposed requirements).

"The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law." McKart v. United States, 395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) (quoted in Woodford, 548 U.S. at 88, 126 S. Ct. at 2384-85).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

Woodford, 548 U.S. at 90, 126 S. Ct. at 2385 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).

To determine "proper exhaustion" in prisoner civil rights actions, the Supreme Court has looked to the requirements of the "prison grievance system." Woodford, 548 U.S. at 95, 126 S. Ct. at 2388 (stating "[t]he benefits of exhaustion can be realized only if the prison grievance system

is given a fair opportunity to consider the grievance."). Thus, a prisoner must comply with rules which "are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218, 127 S. Ct. 910, 922, 166 L. Ed. 2d 798 (2007). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" Jones, 549 U.S. at 218, 127 S. Ct. at 922-23.

An Inmate Orientation Handbook is given to all inmates upon entering the custody of the Florida Department of Corrections to help them "understand the general rules, procedures, requirements and routines" of prison life. The Handbook states:

> The Department has a grievance process available for you to resolve issues you may have. You are encouraged to make every effort to resolve your issue prior to filing a grievance. There are two types of grievances, informal and formal. Grievance types and procedures will be explained to you during orientation and can be found in Rule 33-103, Florida Administrative Code.

Form N11-091 (Revised 11/5/14).[2] Pursuant to the Department's rules and procedures governing inmate grievances, inmates may file complaints regarding "[t]he substance, interpretation, and application of rules and

---

[2] The Inmate Orientation Handbook is available on the Department of Corrections' website: www.dc.state.fl.us.

procedures of the department that affect them personally." FLA. ADMIN. CODE R. 33-103.001(4)(a). Thus, the Department has provided an avenue for inmates to challenge or otherwise complain about departmental rules and Chapter 33-103 outlines that process.

Chapter 33-103 requires an inmate to file an informal grievance, formal grievance, and then an appeal to the Office of the Secretary. FLA. ADMIN. CODE R. 33-103.007(1). In limited circumstances not relevant here, an inmate may also file a "direct" grievance to the Secretary. FLA. ADMIN. CODE R. 103.1007(6). The Department's procedures specify the manner in which grievances must be filed, and provide time limits for doing so. *See* FLA. ADMIN. CODE R. 33-103.011. The Department's procedures concerning the three grievance steps suggest that after completing these steps, nothing further is required before initiating a lawsuit. *See* FLA. ADMIN. CODE R. 33-103.011(4) (noting that expiration of time limits "at any step in the process shall entitle the complainant to proceed to the next step of the grievance process.").

Nevertheless, Defendant argues that under Ross v. Blake, filing a PIRM is an "available" remedy which a "reasonably prudent prisoner" should be able to determine that exhaustion "should start in Chapter 120."

Case No. 3:19cv575-RV-MAF

ECF No. 36 at 13-14.  Defendant acknowledges that federal courts are split on this issue, but contends that cases which do not require prisoners to initiate a PRIM are "misguided."  *Id.* at 15-16.

It is that contention, however, that seems misguided because none of the rules of the Florida Department of Corrections direct inmates to file a PIRM.  Inmates cannot be expected to follow a path that is invisible.  Moreover, Ross does not support Defendant's position.

The Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA."  Ross v. Blake, 136 S. Ct. 1850, 1855, 195 L. Ed. 2d 117 (2016) (holding that prisoners "need not exhaust remedies if they are not 'available'").  Notably, in determining what the prisoner must do to exhaust, the Court considered Maryland's Inmate Handbook which set out the "Administrative Remedy Procedure."  Ross, 136 S. Ct. at 1855.  The procedure "begins with a formal grievance to the prison's warden; it may also involve appeals to the Commissioner of Correction and then the Inmate Grievance Office."  136 S. Ct. at 1855.

In Ross, the prisoner thought that an internal investigation "served as a substitute for that otherwise standard process."  *Id.*  The Supreme Court has consistently rejected such exceptions to the statutory requirement of

exhaustion, explaining that "a judge-made doctrine" is not permissible and rejecting efforts to carve out exceptions. *Id.* at 1857 (citing to Woodford, Porter v. Nussle, and Booth v. Churner). It did so again in Ross, stating that if "an administrative scheme" is "so opaque that it becomes, practically speaking, incapable of use," it is not available. 136 S. Ct. at 1859. Thus, if "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it," then such a process is "no longer available." *Id.* at 1859-60 (quoting from Eleventh Circuit decisions in Goebert v. Lee County, 510 F.3d 1312, 1323 (11th Cir. 2007), and Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008), that "[r]emedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available")).

When a party urges the court to carve out an exception to procedures given to prisoners, those exceptions must be rejected, whether the suggestion comes from prisoners or prison administrators. Here, the Rules of the Florida Department of Corrections provide guidance to prisoners of the requirements of its administrative grievance process. The Rules provides a three-step grievance process. There is no specific requirement that an inmate must take additional steps to exhaust a grievance

concerning a challenge to an Administrative Rule.  Any such implied requirement is "so opaque that it becomes, practically speaking, incapable of use."  Ross, 136 S. Ct. at 1859.  Filing a Petition to Initiate Rulemaking is not a step that the Department holds out to inmates as a requirement in the grievance process.  Thus, an inmate's "failure to comply with an optional administrative procedure does not amount to a failure to properly exhaust his remedies."  Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (referencing Darby v. Cisneros, 509 U.S. 137, 147, 113 S.Ct. 2539, 2545, 125 L.Ed.2d 113 (1993) (interpreting the exhaustion requirement of the Administrative Procedure Act to allow judicial review when litigants have exhausted all mandatory administrative appeals but have not exhausted optional ones)).

Defendant argues that the "normal prisoner grievance process alone . . . is insufficient to properly notice FDOC about an administrative regulation."  ECF No. 36 at 10.  That argument should be rejected, first, because the Department's Rules specifically permit inmate grievances which concern "[t]he substance, interpretation, and application of rules and procedures of the department that affect them personally."  FLA. ADMIN. CODE R. 33-103.001(4)(a).  Second, the argument should be rejected

Case 3:19-cv-00575-RV-MAF  Document 45  Filed 05/11/20  Page 12 of 16

Page 12 of 16

because it is an exception to its stated rules given to Florida prisoners. If the Department expects inmates to file a PIRM, its Rules must say so.

Although Florida's Administrative Procedure Act permits prisoners to have limited participation in rulemaking, *see* FLA. STAT. § 120.81(3)(a) and § 120.54(3)(c) or (7), prisoners are not afforded the ability to challenge the invalidity of a Rule under § 120.56. Chapter 120 specifically excludes inmates from much of Florida's Administrative Procedure Act. *See* Fla. Stat. § 120.81(3).[3] Accordingly, the procedures for challenging the validity of a rule are not "available" to Plaintiff. For many years . . .

> . . . prisoners have been forbidden to maintain challenges to administrative rules under section 120.56 and predecessor provisions. See § 120.81(3)(a), Fla. Stat. (1997). No intervening enactment suggests that the Legislature intended to authorize

---

[3] The statute provides:

(a) Notwithstanding s. 120.52(13), prisoners, as defined by s. 944.02, shall not be considered parties in any proceedings other than those under s. 120.54(3)(c) or (7), and may not seek judicial review under s. 120.68 of any other agency action. Prisoners are not eligible to seek an administrative determination of an agency statement under s. 120.56(4). Parolees shall not be considered parties for purposes of agency action or judicial review when the proceedings relate to the rescission or revocation of parole.
(b) Notwithstanding s. 120.54(3)(c), prisoners, as defined by s. 944.02, may be limited by the Department of Corrections to an opportunity to present evidence and argument on issues under consideration by submission of written statements concerning intended action on any department rule.
(c) Notwithstanding ss. 120.569 and 120.57, in a preliminary hearing for revocation of parole, no less than 7 days' notice of hearing shall be given.

Fla. Stat. § 120.81(3).

prisoners to use a petition for repeal of a rule, even if the petition also includes a proposed replacement for the existing rule, to obtain judicial review of the kind available when a party who is not a prisoner challenges an existing rule under section 120.56, Florida Statutes (1997).

Quigley v. Florida Dep't of Corr., 745 So. 2d 1029, 1030 (Fla. 1st DCA 1999);[4] see also Caldwell v. State, 821 So. 2d 374-75 (Fla. 1st DCA 2002) (affirming the denial of prisoner's petition to initiate rulemaking by the Department of Corrections "[b]ecause the Administrative Procedures Act does not apply" to prisoners and, thus, prisoner was "not entitled to appellate review of the department's denial of his petition.").

Under the PLRA, the basis for the exhaustion requirement, a prisoner is only required to exhaust "available" administrative remedies.

---

[4] In Quigley, a prisoner "filed a petition to initiate rulemaking requesting that DOC repeal" an Administrate Code Rule. Quigley, 745 So. 2d at 1030. The petition was denied by the Department and a written statement of reasons provided. The prisoner sought to appeal the order denying his petition to initiate rulemaking. Id. The court held:

> Mr. Quigley's claim that Florida Administrative Code Rule 33-3.005(9)(a)2. is invalid, on grounds it violates the state and federal constitutions, does not entitle him to review of the merits of his contention here. Initial appellate judicial review of the validity of the reasons DOC sets out in a written statement of reasons for denying a petition is not available to prisoners under the Administrative Procedure Act. Their only avenue for judicial review is to seek declaratory or other relief in circuit court, as was done in *Bass v. Department of Corrections*, 684 So.2d 834 (Fla. 1st DCA 1996).

745 So. 2d at 1031.

Case No. 3:19cv575-RV-MAF

42 U.S.C. § 1997e(a). As a petition to initiate rulemaking cannot be used by a prisoner to challenge the constitutionality of an administrative rule under Florida law, the remedy is not "available" and Defendant's argument should be rejected.

As determined by the Supreme Court in <u>Jones v. Bock</u>, "[c]ompliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" <u>Jones</u> 549 U.S. at 218, 127 S. Ct. at 922-23 (finding "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). Defendant has not identified a single rule which requires inmates to file a petition to initiate rulemaking. Thus, this Court cannot impose an invisible rule as part of the exhaustion process. The motion to dismiss, ECF No. 36, should be denied and Defendant required to submit an answer to Plaintiff's amended complaint.

Accordingly, it is

**ORDERED:**

1. Defendant's motion to stay, ECF No. 37, is **GRANTED in part** and **DENIED in part**.

2. Discovery in this case is stayed and the parties are not required to comply with the Case Management and Scheduling Order, ECF No. 35.

This litigation, however, need not be stayed until the conclusion of the appeal in *Sims v. Inch*.

**Recommendation**

It is respectfully **RECOMMENDED** that Defendant's motion to dismiss, ECF No. 36, be **DENIED**, that Defendant be required to file an answer to the complaint within ten (10) days of the date an Order is entered adopting this Report and Recommendation, and this case be **REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on May 11, 2020.


     S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## **NOTICE TO THE PARTIES**

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.